## A01A1254. RIDDLES v. THE STATE.
(554 SE2d 737)

BARNES, Judge.

Randy Riddles appeals his conviction of violating OCGA § 16-13-30 (b) by selling marijuana, asserting that (1) the 38-member panel of potential jurors contained a percentage of blacks that was disproportionately small compared with the percentage of blacks qualified to serve as jurors in the county, (2) the State failed to prove the chain of custody of the suspected controlled substance, and (3) he did not forfeit the right to open and close closing argument merely by playing a portion of a videotape during recross-examination of a State's wit-

---

ness. Viewing the record in the light most favorable to the conviction, and for the reasons that follow, we affirm.

1. The record shows that, before beginning jury selection, Riddles, who is black, challenged the panel of potential jurors on the ground that only three of the thirty-eight (7.9 percent) were blacks, but the percentage of blacks in the population of the county was "probably . . . around 28 to 30 percent based on 1990 census information." The court overruled his challenge and denied his subsequent motion for mistrial, stating that

> it's been certified within the past few weeks . . . that the whole jury box is within the five percent guideline. . . . It's not whether or not the individual jurors that are placed here constitute a representative cross section; it's whether or not the jury [list] as a whole is representative, and I am certain that this county jury list qualifies. . . . [T]his [panel] is the culmination of what's left over after three juries have been stricken so I'd overrule your motion because I am convinced that the whole jury box in Emanuel County is proper and in the five percent range for male/female, blacks and white [sic], and I have not been shown how the selection process came up with an inordinate amount of people. It's chosen by computer and random selection.

> We recently held that

> [w]hile traverse jury lists must consist of a representative and fair cross-section of the community to the fullest extent possible, the same is not true of an array. Provided that persons are not systematically excluded on the basis of race or other cognizable grouping, and provided that the jurors comprising a panel are randomly selected from a representative pool, the selection process is not inherently defective.

(Footnotes omitted.) *Kent v. State*, 245 Ga. App. 531 (1) (538 SE2d 185) (2000). See also *McElroy v. State*, 244 Ga. App. 500, 503 (2) (b) (536 SE2d 188) (1999) (defendant must show purposeful discrimination to successfully challenge a jury array); *Prine v. State*, 237 Ga. App. 679, 680 (1) (515 SE2d 425) (1999) ("[I]t is the pool of jurors from which the jury sent to be voir dired is *drawn* that must be representative of the community, not the individual panel sent to a courtroom for voir dire purposes.") (emphasis in original).

Here, Riddles contends, as he did at trial, simply that "the jury array . . . contained a proportionately small percentage of blacks (7.9%) compared to the population of blacks qualified to serve as jurors in Emanuel County at large (27.8%)." Because Riddles failed

to establish any flaw in the selection process, such as manipulation, misuse, or systematic exclusion of cognizable groups, the trial court properly rejected his challenge to the array.

2. Riddles next contends that the State failed to prove the marijuana's chain of custody, arguing that there was a break in the chain between a drug enforcement officer and the Augusta Crime Laboratory. The record shows that the officer transported the marijuana to the lab in a bag bearing a case number and a bag number. It further shows that the bag was then given a lab number, placed in the evidence vault, later removed and tested by a chemist — one of three people with access to the vault — and then replaced in the vault. The officer and the chemist identified the marijuana at trial by means of the three numbers. Riddles points to the facts that the chemist did not personally receive the item from the officer and that he was not the only person with access to the vault.

Our Supreme Court has held that

> [w]hen blood samples are handled in a routine manner and nothing in the record raises a suspicion that the blood sought to be admitted is not the blood tested, the blood is admissible and the circumstances of each case need only establish reasonable assurance of the identity of the sample. Absent affirmative evidence of tampering, mere speculative doubt as to the handling of evidence while in the possession of the Georgia Crime Lab is a matter for consideration by the jury.

(Citations and punctuation omitted.) *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999), cert. denied, 528 U. S. 1172 (120 SC 1199, 145 LE2d 1102) (2000). See also *Givens v. State*, 214 Ga. App. 774 (2) (449 SE2d 149) (1994) (lack of testimony by crime lab employee who originally received exhibits does not break the chain of custody). Under these standards, this enumeration must fail.

3. Finally, Riddles argues that he did not forfeit the right to open and close final arguments merely by playing a portion of a videotape while recross-examining a State's witness. After Riddles cross-examined the witness, the State played a portion of a videotape to show the purchase of the marijuana from Riddles. During recross, Riddles obtained permission to play the tape "from the time of the alleged sale through the post-buy meeting and let the jury see if any other items were purchased or where those items might have gone," and portions of the tape were played.

> If, under the guise of cross-examination, a defendant reads from the portions of a prior written statement of a witness

that are not related to impeaching the witness, the defendant has effectively introduced evidence to the jury that should have been formally offered into evidence and the defendant therefore loses the right to open and close final arguments.

*Lane v. State*, 248 Ga. App. 470, 471-472 (2) (545 SE2d 665) (2001). Riddles thus forfeited the right to open and close final argument, and the trial court did not err in so holding.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 12, 2001 — 

*Lovett Bennett, Jr.,* for appellant.
*Steven Askew, District Attorney,* for appellee.