## A05A0686. HERNANDEZ v. THE STATE.
### (617 SE2d 630)

ADAMS, Judge.

Pedro Hernandez appeals his conviction and sentence on three felony counts: armed robbery (twenty years to serve ten), robbery (merged with armed robbery), and aggravated assault (ten years to serve concurrently).

1. Construed in favor of the verdict, the evidence shows that on the afternoon of July 3, 2003, Vidal Ixmay crossed an open field behind his house to reach the local convenience store where he bought a carton of beer and a ten-dollar telephone card. Returning home across the field, Ixmay was approached by two men who demanded that he give them some of his beer. When Ixmay refused, one of the men struck Ixmay's right arm with a "dry branch" two and one-half to three feet in length, causing him to drop the beer and the phone card. Ixmay proceeded home and turned to see the men walking through some bushes toward a cleared part of the field.

Back at the house, Ixmay related the assault to some of his companions, one of whom spoke English, and suggested they call the police. This man, identified by Ixmay as "Gabeno," served as Ixmay's interpreter when Officer Jonathan Zuker arrived to investigate. Zuker proceeded to ask Ixmay, through Gabeno, what had occurred and where the men had gone. Ixmay showed the officer where he had been assaulted and the resulting welt on his arm and then led him to where the men had retreated through the bushes. The officer proceeded through the bushes with Ixmay and Gabeno following and was the first to spot the two men in the clearing. One of the men, later identified by police as Pedro Hernandez, wore white shorts and was smashing empty bottles with a large stick. The other man, later identified as co-defendant Romeo Lucas, was drinking a bottle from a nearby carton of beer. According to Zuker's testimony, Ixmay pointed to the two men prompting Zuker to ask, through Gabeno, whether those were the men who attacked him. Ixmay replied in the affirmative.

According to Zuker's testimony, Lucas then attempted to return Ixmay's phone card, but dropped it on the ground, and Zuker proceeded to arrest the defendants. Ixmay, however, testified that the man in white shorts holding the stick, the man police identified as Pedro Hernandez, was the one who beat him with the "tree branch" and who later attempted to return the phone card to him. Ixmay retrieved his card, but no other evidence was recovered from the field. Gabeno was not called to testify.

The evidence was sufficient to show that Hernandez took Ixmay's property by use of force and by use of an offensive weapon,

thereby committing robbery and armed robbery. See OCGA §§ 16-8-40; 16-8-41. Given that witnesses described the size and shape of the stick and the bruise it caused on the victim, the jury was authorized to conclude that the large stick was an offensive weapon for the purposes of OCGA § 16-8-41. See generally *Eady v. State*, 182 Ga. App. 293, 295 (355 SE2d 778) (1987). The evidence was also sufficient to show that Hernandez assaulted Ixmay with an object which when used offensively was likely to result in serious bodily injury. OCGA § 16-5-21.

Hernandez contends that the identification testimony was insufficient. Contrary to Hernandez's claim, the case against him is not fatally flawed because the interpreter who helped Zuker on the day of the arrest did not testify. At trial, Ixmay testified that the two people whom they found in the field, and who were subsequently arrested, were the two perpetrators. He added that the man in the white shorts gave him back his telephone card. Both Zuker and Ixmay identified the defendants in court as the men in the field that day. And, although Ixmay equivocated on identifying Hernandez in court, questions of the credibility of the witnesses and weight of the evidence are for the jury. *Williams v. Kennedy*, 240 Ga. 163, 165 (4) (240 SE2d 51) (1977).

2. Hernandez contends the trial court erred by denying his challenge to the jury selection process. At trial, his counsel objected to the fact that the pool of 36 jurors had been organized in alphabetical order. She urged that there had been "some sort of systematic choosing of the jurors that would be inappropriate." Counsel for a co-defendant later stated that he had learned from the clerk that although the array was selected randomly, the array was then organized alphabetically for the purposes of jury selection. Hernandez's counsel argued that the arrangement could lump Hispanic names together, thereby altering the random selection process, although no evidence was presented to show whether Hispanic names tend to start with letters in the latter part of the alphabet. Both defendants argued that the issue raised questions under Georgia law and the United States Constitution. The judge denied the motions, reasoning that he knew of no prejudice that would have been caused to the Hispanic defendants as a result of the alphabetization.

First, such a challenge must be in writing, and Hernandez's motion was not. OCGA § 15-12-162. See also *Coley v. State*, 231 Ga. 829, 836 (III) (204 SE2d 612) (1974); *Usher v. State*, 258 Ga. App. 459, 464 (2) (574 SE2d 580) (2002).

But even if we were to accept the motion given that the alphabetization of the array only became apparent at voir dire, we find no error. The defendant has the burden of proving purposeful discrimination in the jury array. *Pruitt v. State*, 279 Ga. 140, 142 (3) (611 SE2d 47) (2005); see generally *Smith v. State*, 275 Ga. 715, 716 (1) (571

SE2d 740) (2002). Because Hernandez "failed to establish any flaw in the selection process, such as manipulation, misuse, or systematic exclusion of cognizable groups, the trial court properly rejected his challenge to the array." *Riddles v. State*, 251 Ga. App. 525, 526-527 (1) (554 SE2d 737) (2001).

3. Hernandez also contends the trial court erred by rejecting his claim under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), that the State exercised a peremptory strike in a racially discriminatory manner during jury selection. The three-step procedure for analyzing a *Batson* challenge is well known. "The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent." (Footnote omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). We affirm the decision of the trial court unless it was clearly erroneous. *Johnson v. State*, 266 Ga. 775, 777 (4) (470 SE2d 637) (1996).

The court determined that Hernandez had made a prima facie showing and asked the State to explain its strike. The State said that it struck the black juror because he had been arrested, the same reason it gave for striking a white juror. The court determined that the reason was race-neutral. Hernandez contends that without further information regarding what the arrest charges were, one cannot determine whether the State's reason was race-neutral. But Hernandez has not provided any argument or law to support this contention, and we find it to be without merit.

4. Hernandez's contention that the trial court erred by allowing testimony describing the stick without the stick being introduced into evidence is without merit. "The best evidence rule applies only in the context of a writing. [Cit.]" *Rogers v. State*, 224 Ga. App. 359, 360 (480 SE2d 368) (1997).

5. Hernandez may not complain about a failure to charge the jury on robbery by intimidation because he did not request the charge in writing. *Dukes v. State*, 224 Ga. App. 305, 310 (480 SE2d 340) (1997).

6. Hernandez contends that his arrest was illegal because it was based on the hearsay of the interpreter, who did not testify at trial. But Hernandez has not shown that this issue was raised at trial, and therefore there is nothing for us to review. *Davis v. State*, 273 Ga. App. 397 (615 SE2d 203) (2005).

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JULY 13, 2005.

*Kelley A. Dial, James S. Astin,* for appellant.

*Donald N. Wilson, District Attorney, Brian P. Duncan, Assistant District Attorney*, for appellee.