**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 25, 2024**

# In the Court of Appeals of Georgia

A24A0108. GRIGG v. STATE.

LAND, Judge.

John Scott Grigg appeals from the trial court's order revoking his probation, arguing that his due process right to confront adverse witnesses was violated and that inadmissable evidence was considered during the revocation hearing. We granted Grigg's application for discretionary review. For the following reasons, we reverse the trial court's order.

As a general rule, "[t]his court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court." (Punctuation and footnote omitted.) *Dugger v. State*, 260 Ga. App. 843, 843 (581 SE2d 655) (2003). This Court will affirm a probation revocation if the record includes "some competent

evidence to show that the defendant violated the terms of his probation in the specific manner charged." (Citation omitted.) *Grimes v. State*, 364 Ga. App. 518, 519 (875 SE2d 500) (2022). See OCGA § 42-8-34.1. Moreover, evidence produced at a revocation proceeding need only establish the violations of probation by a preponderance of the evidence, a less stringent standard than that required to sustain a criminal conviction. *Caldwell v. State*, 327 Ga. App. 471, 472 (758 SE2d 325) (2014) (citing OCGA § 42-8-34.1 (b)).

The evidence adduced at the probation revocation hearing shows that in 2017, Grigg pled guilty to possession of methamphetamine and possession of a firearm during the commission of a crime. The trial court sentenced Grigg to a total of seven years, with the first two years to be served in confinement, and the remainder to be served on probation. On March 7, 2023, a warrant for Grigg's arrest was issued on the basis that Grigg had violated the conditions of his probation by refusing to participate in the Coastal Residential Substance Abuse Treatment ("RSAT"). The warrant was signed by Amanda Cannady of the Department of Community Supervision ("DCS"). Later that month, the State filed a petition for revocation of Grigg's probation on the same basis, also signed by Cannady.

The matter proceeded to a probation revocation hearing at which the State called Officer Cannady as its only witness. Officer Cannady testified that she was employed by the DCS and that she does not work for the RSAT program or the Department of Corrections. Officer Cannady testified that she was aware of the RSAT program, but she was "not quite sure" about the exact requirements with which a probationer had to comply. She testified that the terms of Grigg's probation required him to complete the RSAT program and that his remaining probation would be terminated upon successful completion of that program. Officer Cannady was first "made aware that [Grigg] did not want to complete RSAT" requirements on February 21, 2023, when she received a form titled "Georgia Department of Corrections Offender Refusal Form" ("Refusal Form") from the Department of Corrections. She was then told to issue a warrant for his arrest for his failure to comply.

Office Cannady testified that did not speak with Grigg about the contents of the Refusal Form or the refusal in general and did not witness Grigg sign or otherwise acknowledge the Refusal Form. According to the Refusal Form, Grigg was informed of the consequences of refusing to complete the RSAT program, acknowledged those

consequences, and signed his name and prisoner number. The Refusal Form also contains a signature line for a "counselor" to sign as a witness. Although this witness signature is illegible, Officer Cannady testified that it was not her signature. The trial court sustained Grigg's objection to any testimony by Officer Cannady regarding Grigg's specific actions that resulted in his failure to comply with the RSAT program.

Grigg's counsel repeatedly objected to the admission of the Refusal Form on the ground that it was inadmissible hearsay because Cannady, as the only witness, had neither signed the form nor witnessed its signing. The State then recalled Officer Cannady in an attempt to lay the foundation necessary to introduce the Refusal form into evidence under the business records exception to the hearsay rule. See OCGA § 24-8-803 (6). The trial court allowed the Refusal Form to come into evidence under the business records exception over Grigg's objection. With the exclusion of Officer Cannady's testimony regarding Grigg's behavior at the RSAT program, the Refusal Form was the only evidence admitted at the revocation hearing showing that Grigg did not complete the RSAT program.

After the close of the State's evidence, Grigg then made an unsworn statement to the trial court in support of mitigation of his sentence. During this unsworn

statement,[1] Grigg argued that he signed the Refusal Form because he had been accepted into a ministry-run residential rehabilitation program after he had begun the RSAT program and that he sought to be transferred there instead.

Thereafter, the trial court found that the State had met its burden of proving by a preponderance of the evidence that Grigg violated the terms of his probation by refusing to complete the RSAT program and revoked two years of Grigg's probation. The trial court did not inquire into the issue of whether there was good cause for not allowing the right of confrontation, and it did not conduct an examination of the State's reasons for failing to produce a witness from RSAT or the reliability of the hearsay evidence. We granted Grigg's application for a discretionary appeal from that order.

1. Grigg contends that his due process right of confrontation to cross-examine adverse witnesses was violated when those adverse witnesses failed to appear during the probation revocation hearing without good cause shown. We agree.

---

[1] See *Bell v. Austin*, 278 Ga. 844, 844 (1) (a) (607 SE2d 569) (2005) ("unsworn statements are not treated as amounting to any evidence, except in specified cases from necessity") (citation and punctuation omitted).

The Confrontation Clause of the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right "to be confronted with the witnesses against him." Under the Confrontation Clause, testimonial hearsay is admissible against a criminal defendant only when (a) witness is unavailable to testify and (b) the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U. S. 36, 53-54 (III) (124 S Ct 1354, 158 SE2d 177) (2004).

Nevertheless, "in a probation revocation hearing, the right to confront adverse witnesses arises not under the Confrontation Clause, but rather as a matter of due process, which is less stringent than the confrontation guarantee in a criminal trial." (Citation omitted.) *Grimes*, 364 Ga. App. at 520. The "minimum requirements of due process include the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing the confrontation)." (Citation and emphasis omitted.) Id.[2] Thus, the probationer must make some

---

[2] See also *Morrisey v. Brewer*, 408 U. S. 471, 489 (III) (b) (92 SCt 2593, 33 LE2d 484) (1972) (minimum requirements of due process owed to parolees include the right to confront adverse witnesses unless the hearing officer finds good cause for not allowing such); *Gagnon v. Scarpelli*, 411 U. S. 778, 781-782 (II) (93 SCt 1756, 36 LE2d 656) (1973) (applying due process mandates set forth in *Morrisey* to probation revocation proceedings).

"specific objection or invocation of the due process right . . . in order to trigger consideration of the secondary issue of whether there was good cause for not allowing the confrontation, which usually requires examination of both the reasons for the State's failure to produce the declarant and the reliablity of the hearsay evidence." (Punctuation omitted.) *Grimes*, 364 Ga. App. at 520, citing *Williams v. Lawrence*, 273 Ga. 295, 298 (540 SE2d 599) (2001). The State bears the burden of proving that hearsay evidence bears a "sufficient indicia of reliability to withstand due process scrutiny." *Grimes*, 364 Ga. App. at 520-521.

In *Grimes*, supra, the State petitioned to revoke the defendant's probation for the commission of new offenses of aggravated assault and terroristic threats when he appeared at the house of two named victims and threatened to harm them. 364 Ga. App. at 519. The victims did not appear at the probation revocation hearing; rather, the responding officer testified to one victim's statements that he personally witnessed and observed while responding to the scene. Id. at 519-520. The trial court overruled the defendant's objections to this officer's testimony on due process and hearsay concerns and revoked his probation. This Court reversed the trial court's order, in part, because the trial court "failed to examine the reasons for the State's

7

failure to produce the victims" for good cause. Id. at 522. See also *Ware v. State*, 289 Ga. App. 860, 863 (658 SE2d 441) (2008) (when probationer raised due process concerns at probation revocation proceeding, trial court "should also have considered the secondary issue of whether there was good cause for not allowing the confrontation").

Similarly to *Grimes*, supra, the trial court in this case failed to examine whether the State had a good reason for its failure to provide a witness with first-hand knowledge of Grigg's refusal to complete the RSAT program. Grigg's counsel objected to Officer Cannady's testimony and the admission of the Refusal Form multiple times as violating his due process right to confront the witness against him. The trial court overruled the objection. In so ruling, the trial court did not examine — nor did the State present –- any evidence to explain why the State failed to provide a witness who was employed by the Department of Corrections or the RSAT program or someone who otherwise had first-hand knowledge of Grigg's refusal to comply with the RSAT program or his signing of the document. The sole testimony that spoke to the reliability of the Refusal Form was Officer Cannady, who was not employed by the RSAT or the Department of Corrections, was not present when the form was signed

or acknowledged, did not sign the form herself, had no personal knowledge regarding Grigg's alleged singing of the Refusal Form, and had limited knowledge of basic facts of the RSAT program.

Relying on several federal circuit court of appeal cases,[3] the State invites us to re-visit the requirement that a trial court must determine whether there was "good cause" for failing to provide a probationer with the ability to confront and cross-examine adverse witnesses against him before it may admit hearsay statements in a probation revocation proceeding. We decline the invitation as the Georgia courts have consistently used the same framework which requires the analysis for good cause as part of the due process right of confrontation. See e. g., *Williams*, 273 Ga. at 298; *Grimes v. State*, 364 Ga. App. at 520-501; *Ware*, 289 Ga. App. at 862-863.

---

[3]See e. g. *United States v. Simmons*, 812 F.2d 561, 564 (II) (9th Cir. 1987) (admission at probation revocation hearing of copies of hospital records prepared by defendant's attending physician and staff, and denial of defendant's opportunity to confront and cross-examine hospital personnel, was not plain error despite trial court's failure to inquire if the State had good cause for not providing these witnesses when "cases also suggest that the reliability of evidence may provide a basis for its admission"). But see *United States v. Ferguson*, 752 F.3d 613, 617 (II) (4th Cir. 2014) (reliability of hearsay evidence cannot be the beginning and the end of the interest of justice analysis, in determining whether good cause exists to deny defendant his procedural right to confront and cross-examine a witness in a revocation hearing).

Because Grigg specifically invoked his due process right of confrontation and because the trial court failed to examine the reasons for the State's failure to produce a competent witness to testify regarding the RSAT Refusal Form, we find that Office Cannady's testimony and the Refusal Form were erroneously admitted. See *Grimes*, 364 Ga. App. at 522.

2. Moreover, the State failed to meet its burden of proving that the Refusal Form evidence fell under the business record exception to hearsay when there was no testimony or other evidence presented that the State's sole witness was employed by, associated with, or familiar with the internal procedures of the RSAT program.

"Hearsay evidence has no probative value and is inadmissible in a probation revocation proceeding." *Couch v. State*, 246 Ga. App. 106, 107 (2) (539 SE2d 609) (2000). This Court reviews a trial court's ruling as to whether certain evidence constitutes hearsay for an abuse of discretion. *Beavers v. State*, 346 Ga. App. 373, 378 (2) (816 SE2d 384) (2018).

To introduce a writing under the business records exception to the hearsay rule (OCGA § 24-8-803 (6)), "a witness must lay a foundation indicating that he or she is aware of the method of keeping the documents." (Footnote omitted.) *Santana v.*

*State*, 283 Ga. App. 696, 698 (1) (642 SE2d 390) (2007) (citing former OCGA § 24-3-14). See *Miller v. State*, 266 Ga. 850, 854 (3) (472 SE2d 74) (1996) (although certificate might have been a record made in the regular course of business as a record of an event, it was not admissible as a business record without a foundation being laid through the testimony of a witness who is familiar with the method of keeping records and who can show that the entry was made in the regular course of business). "It is not required that the witness made the records or kept them under his or her supervision or control. Instead, the witness must be able to testify that the record was made (1) in the regular course of business, and (2) at the time of the event or within a reasonable time of the event." (Citation and punctuation omitted.) *Strobel v. State*, 322 Ga. App. 569, 571 (745 SE2d 796) (2013) (citing former OCGA § 24-3-14).

Here, the State failed to lay a proper foundation to have Officer Cannady introduce the Refusal Form under the business record exception to the hearsay rule. It is undisputed that Officer Cannady, the State's only witness, was not associated with RSAT (the agency that oversaw Grigg's participation in the program), was not associated with the Department of Corrections (the agency that created the Refusal Form), did not have any knowledge about when the Refusal Forms was signed, and

11

did not witness Grigg sign the document. Therefore, the State has not proven that Officer Cannady was familiar with whether the Refusal Form was made in the course of business or within a reasonable time after the event. Compare *Jones v. State*, 345 Ga. App. 14, 18-19 (2) (b) (812 SE2d 337) (2018) (investigator who had been employed as a deputy with the sheriff's office and who had personal knowledge of the investigation in the case was able to lay a proper foundation for intoxilyzer printout cards).

Because the State elicited no testimony to indicate that its only witness was employed by, associated with, or familiar with the internal procedures of the agency at issue or with that agency's record keeping, we cannot find that the State laid a proper foundation to admit the Refusal Form as a business records hearsay exception. Accordingly, the trial court erred by basing its revocation decision on the Refusal Form. See, e. g., *Henley v. State*, 317 Ga. App. 776, 778 (1) (a) (732 SE2d 836) (2012) (reversing revocation of probation when the trial court relied solely on inadmissible hearsay).

*Judgment reversed. Miller, P. J., and Markle, J., concur.*